# Wytheville.

## AMERICAN BONDING & TRUST COMPANY OF BALTIMORE v. MILSTEAD.

### JUNE 16, 1904.

1. ASSUMPSIT—*Joinder of Counts—Sealed and Unsealed Instruments.*— Since the passage of the Act of Assembly, approved January 25, 1898 (Acts 1897-'8, p. 103), assumpsit may be brought on sealed instruments, and counts on such instruments may be joined in the same declaration with counts on unsealed instruments.

2. PLEADING—*Assumpsit—How Damages Laid.*—Damages need not be claimed at the end of each count of a declaration in assumpsit, but may be claimed at the conclusion of the declaration for all the causes of action in the several counts. In the case at bar, the damages are claimed at the conclusion of the second count of the declaration in language broad enough to include the first count.

3. CHANGE OF VENUE—*Sergeant of City a Party—Jury.*—The mere fact that a plaintiff in a common law action in a Corporation Court is sergeant of the city is no ground for a change of venue on motion of the defendant. Ample provision is made by section 893 of the Code for a case where it is improper for the sergeant to summon the jury. In the case at bar, no suggestion was made at the trial that the jury was not properly summoned, or that the defendant could not have a fair trial with the jury selected.

4. CONTINUANCE—*Amended Bill of Particulars.*—It is not error to refuse a continuance merely because an amended bill of particulars is filed by a plaintiff on the motion of the defendant, where it appears that the amended bill was not called for till eleven months after the action was brought, and two months after the filing of the original bill of particulars, and the latter gave the sources of all the information contained in the former, and the information furnished by the amended bill was not material to the defence.

5. PLEADING—*General Issue—Special Pleas.*—Where the general issue

has been pleaded, it is not error to refuse special pleas setting up matter provable under the general issue, and permitting the defendant to set up all of his defences under that issue.

6. BILLS OF EXCEPTION—*Excluded Evidence.*—Although counsel may explain the object of a question so far as to show its materiality, the ruling of the trial court refusing to permit the witness to answer will not be considered, unless the bill of exception to the ruling of the court shows what was expected to be proved by the witness. The same rule applies to questions on cross-examination as to questions in chief.

7. EVIDENCE—*Relevancy—Case at Bar.*—Where the issue is made that an officer knowing the default of his deputy, "condoned his fault by lending him money," it is not competent to show that another person loaned the deputy money about that time. That fact is immaterial.

8. EVIDENCE—*Relevancy—Case at Bar.*—The defence by a surety on a deputy officers' official bond being that the officer knew of his deputy's peculations and retained him in office, it was proper to ask a witness for the surety, on cross-examination, if he had made any suggestions to the officer of the embezzlement of his deputy.

9. OFFICIAL BONDS—*Liability of Surety—Good Faith of Obligee—Negligence—Fraud.*—Good faith on the part of an officer is the test of his right to recover against his deputy and surety on a bond given by the latter with condition for the faithful discharge by the deputy of the duties of his office. Fraud will not be imputed to the officer merely because by reason of negligence or inattention to his own affairs, he has failed to discover facts which materially affect the surety's risk. He does not owe this amount of diligence to the surety. In order to release the surety on such a bond fraud and bad faith must be brought home to the officer (obligee in the bond) by clear and decisive evidence.

10. INSTRUCTION—*Refusal—Fully Instructed.*—When instructions have already been given which cover the entire case and fairly submit it to the jury, to add repeated statements of the law, though in somewhat different form, tends to mislead and confound the jury, and it is not error to refuse the additional instructions.

Error to a judgment of the Corporation Court of the city of Newport News, in an action of assumpsit, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Thomas W. Shelton,* for the plaintiff in error.

*R. G. Bickford* and *R. M. Lett,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Corporation Court of the city of Newport News, in an action brought by the defendant in error against the plaintiff in error, to recover certain damages alleged to have been sustained by reason of the breach of a promise and undertaking set forth in a certain contract in writing executed by one E. L. Herndon, with plaintiff in error as his surety, to guarantee to defendant in error the faithful performance of the duties of Herndon, as the deputy for defendant in error, sergeant of the city of Newport News.

The plaintiff in error refused to pay the amounts claimed by defendant in error because of the default of the said deputy, upon the ground that defendant in error "knew of Herndon's peculations, and had facts and circumstances brought to his attention equivalant to notice, and not only did not notify plaintiff in error, the surety, but condoned such action by loaning him money."

The declaration in the case contains two counts, to which plaintiff in error demurred, and the demurrer having been overruled, this action of the court is assigned as error.

The bond sued on is in the usual form used by the bonding and guaranty companies, and recites that plaintiff in error, the surety, and Edwin L. Herndon, the principal, are held and firmly bound unto E. W. Milstead, sergeant of the city of Newport News, State of Virginia, in the sum of two thousand dollars, to the payment whereof, well and truly to be made to the said E. W. Milstead, etc., and the condition of the bond is as follows:

"That whereas the above bound, Edwin L. Herndon, on the 16th day of May, 1898, was duly appointed Deputy Sergeant of the city of Newport News, State of Virginia, by the judge of the Corporation Court of the city of Newport News, State of Virginia, upon the recommendation of E. W. Milstead, sergeant of the said city. Now, if the said Edwin L. Herndon shall faithfully discharge the duties of the said office, post or trust, according to law, then this obligation to be void, or otherwise to remain in full force and virtue."

The bond bears date the 1st day of June, 1898, and the first count in the declaration sets out the appointment of Herndon as deputy sergeant, and the execution of the bond; the renewals or extensions thereof upon the reappointment of Herndon as deputy sergeant on several occasions, including the last, on the 9th day of July, 1900, to cover the period between May 16, 1900, and May 16, 1901; the default of Herndon in the performance of his duties as deputy sergeant, and the amount of damages claimed by the plaintiff by reason of such default; the refusal of the surety, plaintiff in error, to pay the amount of damages claimed, that is, the amount of the several sums of money received, collected and retained by Herndon, the deputy; his insolvency, and his departure from the State of Virginia, etc. The defaults, it is claimed in that count, operate as a breach said to have occurred between the 9th of July, 1900, and the 16th of May, 1901, and is that part of the deputy's terms which is particularly covered by the last bond, after the renewal or extension thereof on the 9th day of July, 1900.

The second count simply sets out the writing of July 9, 1900, and identifies the condition and covenants therein described as being those set forth in the first bond of the 1st of June, 1898. In this count the conditions and the covenants are identified by a reference to the bond, while in the first count the conditions are identified by recital and averment.

The grounds stated for the demurrer rest upon the erroneous

theory that a special count in assumpsit cannot be joined in the declaration with a special count on a contract under seal. The counts in the declaration are but counts in assumpsit.

"In an action in assumpsit the promise is the legal cause of action, and where a count states that the defendant agreed or undertook, these words import a promise, and the count, therefore, is in form assumpsit." 4 Rob. Pract. 230.

In support of the contention of counsel for plaintiff in error the cases of *Gary* v. *Abingdon Pub. Co.,* 94 Va. 775, 27 S. E. 595, and *Booker* v. *Donahoe,* 95 Va. 359, are cited, but neither of the cases support the contention, as both are to the point only that counts in tort cannot be joined with counts on contract. Since the Act of Assembly, approved Jan. 25, 1898 (Acts of 1897-'8, p. 103), counts in assumpsit can be joined in the same declaration with counts in assumpsit on a contract under seal.

In *Grubb* v. *Burford,* 98 Va. 553, 37 S. E. 4, the opinion by Buchanan J., following the construction of a similar statute with reference to the actions of trespass and tresspass on the case, given by the court in the case of *Parsons* v. *Harper,* 16 Gratt. 64, says: "The ground of demurrer to the whole declaration is, that there is a misjoinder of counts. All the counts are common counts in assumpsit, except the last, which is a special count upon or for the breach of an agreement under seal. There is no doubt that at common law those counts could not be united in one declaration, and that such misjoinder would have been fatal on general demurrer. But by Act of Assembly, approved Jan. 25, 1898 (Act 1897-'8, p. 103), it is provided, 'That in any case where an action of covenant will lie there may be maintained an action of assumpsit.' Under that act, assumpsit can be maintained upon the writing sued on in the special count, and it is clear that an action of covenant would lie upon it. Since an action of assumpsit will lie upon the cause of action in the last count, as well as upon the several causes of action in the other counts, we see no reason why they may not be properly united in one action of assumpsit, as was done in this case."

It is further contended that the demurrer should have been sustained, because damages were claimed only at the end of the second count, and is not in language broad enough to include the first. But this contention is without merit, and the authorities cited do not sustain it. The declaration sets out at the end of each count the breach relied on by the plaintiff, and the damage claimed is stated at the conclusion of the second count in language broad enough to include the first. The gravamen of each count is the same.

In *Postlewite* v. *Wise,* 17 W. Va. 24, it was held that the damages claimed at the end of the declaration applied to each of the counts; that it is both unusual and unnecessary to insert the claim for damages at the end of each count, and that damages for all the causes of action in the several counts may be claimed at the end of the declaration.

To the same effect is *Hoffman* v. *Dickinson,* 31 W. Va. 142, 6 S. E. 53.

We are of opinion that the declaration in this case, and each count thereof, sets out a good cause of action, and that the demurrer was properly overruled. *Mut. Life Ins. Co.* v. *Oliver,* 95 Va. 445, 28 S. E. 594.

At the calling of the case on the 2nd of January, 1903, it was continued, but during the term plaintiff in error moved the court for a change of venue, which motion was overruled, and this action of the court is assigned as error.

The sole ground of the motion was that the defendant in error, plaintiff below, was sergeant of the city of Newport News, and that it was to be assumed that by reason of his position he would exercise influence over the jury to be selected to try the cause. This was but a broad assertion, unsupported by evidence of any character, either at the time the motion was made, or at any time during the trial. Section 893 of the Code makes ample provision for a case in which the sergeant is unfit from the circumstances in which he is placed to serve process or summon

a jury, and it does not appear from the record by whom the jury in this case was summoned. It does appear, however, that, in addition to no good reason being given for a change of venue, at the February term of the court, 1903, to which the case had been continued by consent of parties, "a jury of nine persons were called, qualified jurors, and free from exceptions, and from the panel two were struck off by the parties, beginning with the plaintiff, each striking off one, and the remaining seven constituted the jury" that rendered the verdict complained of. No suggestion was then made that the jury had been improperly summoned, or that the defendant (plaintiff in error here) could not have a fair trial with the jury thus selected.

The court is further of opinion that the court below did not err in overruling the motion of plaintiff in error, made at the January term, 1903, for a continuance of the cause.

The ground for this motion was that an amended bill of particulars, which plaintiff in error had called for, had just been filed, and which merely showed at what time the several amounts collected by Herndon, deputy sergeant, had been paid by the defendant in error to the parties entitled thereto. This amended bill of particulars was not called for until eleven months after the institution of the suit, and over two months after the filing of the original bill of particulars, in which the names of the persons, from whom and for whom Herndon collected moneys that he had failed to account for, is definitely set forth, and these collections were all made within a period of about six months before Herndon's defalcation and departure from the city of Newport News.

We are unable to see why this information furnished by the amended bill of particulars was material to plaintiff in error, or why it could not have obtained that information from the original bill of particulars, and by inquiry of the persons named therein, from whom and for whom Herndon had collected the respective amounts stated. In point of fact the case was con-

tinued at the January term upon counsel agreeing, in order to avoid compelling defendant in error to summon again forty-one witnesses, that the money stated in the bill of particulars was collected by Herndon by virtue of his office as deputy sergeant, as in the declaration alleged, after the 9th of July, 1900, and before the 16th day of May, 1901; that Herndon had not paid these moneys to any person entitled thereto, but still wrongfully withheld the same, and that the defendant in error, out of his own private funds, before the institution of this suit, made good the said moneys to the several parties entitled thereto. These terms were not imposed by the court upon plaintiff in error, but were merely an agreement of facts arrived at between counsel, whereupon the continuance was by consent, and it nowhere appears in the record that the facts agreed were not the real facts of the case, or that plaintiff in error was at all injured by embodying the agreement in the order entered.

The court is further of opinion that the court below did not err in refusing to allow plaintiff in error to file the three special pleas offered at the February term of court, 1903, when the cause was tried. Plaintiff in error had pleaded at the prior term the general issue, and not only were the matters set up in the special pleas such as could have been proven under the general issue, but the privilege was expressly reserved to it, in the order rejecting the pleas, to offer any evidence under the general issue that was proper to be offered under the pleas tendered, and there is no suggestion anywhere in the record that plaintiff in error was prevented from introducing any evidence which it desired in support of the matters stated in the pleas, or prejudiced by their rejection.

The court is further of opinion that the court below did not err in its refusal to allow the defendant in error, while on the witness stand, to answer the following cross-question propounded to him:

"Was Mr. Herndon intoxicated, and did he remain intoxicated for several days after that?"

The occasion referred to in the question was on a day in August, 1900, when Herndon was in some domestic trouble, and the witness had called to see him with reference to that trouble. We are unable to see the materiality of the evidence sought to be elicited from the witness by the question. This assignment of error, for another cause, could not be sustained, as the bill of exception is faulty, in that it does not indicate what the plaintiff in error proposed to prove by the witness. It is true counsel explained the object of the question, which goes alone to its materiality, but fails to show what was expected to be proved by the witness, and its materiality to the issue in the case. "Where a question is asked, and the witness is not permitted to answer, the bill of exception must show what the party offering the witness expected or proposed to prove by him." And the same rule applies where a question is asked on cross-examination, which the witness is not permitted to answer. *Union Cent. L. Ins. Co.* v. *Pollard,* 94 Va. 157, 26 S. E. 421, 36 L. R. A. 271, 64 Am. St. 715; *Childress* v. *C. & O. Ry Co.,* 94 Va. 189, 26 S. E. 424; *Brock* v. *Bear,* 100 Va. 563, 42 S. E. 307.

The court is further of opinion that the lower court did not err in refusing to allow Dr. H. P. Taylor, a witness introduced by plaintiff in error, to answer the question propounded by its counsel, as to whether or not the witness loaned Herndon money on a certain date in August, 1900, the object of which question, as counsel stated, being to prove by the witness that he had endorsed for Herndon and loaned him money in August, 1900, about the time defendant in error loaned him $300.00  We are wholly unable to see the materiality of this evidence, or that plaintiff in error was prejudiced by its exclusion, especially as it abundantly appears that if money was lent by the witness, Taylor, or the defendant in error, to Herndon in August, 1900,

it was to aid him in removing difficulties confronting him, growing out of domestic troubles, and not out of any default in the discharge of the duties of his office as deputy sergeant, of which default defendant in error at that time had no knowledge whatever.

The court is further of opinion that there is no merit in the plaintiff in error's sixth assignment of error (bill of Exceptions No. 3). Plaintiff in error had introduced the witness, C. A. Ashby, on its own behalf, and on cross-examination counsel for defendant in error propounded to him the question: "Did you make any suggestion to Mr. Milstead, Mr. Ashby, that Mr. Herndon was actually stealing or embezzling that money?" referring to an occasion prior to Herndon's disappearance from Newport News, when the witness spoke to Milstead (defendant in error) with reference to some money which the witness was informed Herndon had collected, and would not pay over to the witness, as counsel for the party, to whom the money was going; and the objection to the question was on the ground, that the facts having been set out to Milstead, the answer would be mere legal opinion.

It is manifest that this was a proper question, as plaintiff in error was seeking to prove that defendant in error had knowledge of Herndon's peculations, and committed a fraud upon plaintiff in error by continuing Herndon in his office as deputy, and the answer witness made but negatived the contention that defendant in error was informed by the witness of Herndon's defaults, the answer being as follows: "No, sir. Mr. Milstead was rather slow about it, but I never knew until Mr. Herndon left here as to his being short. There was no suggestion made then."

At the trial of the cause plaintiff in error asked for six instructions, two of which, viz: The third and sixth, were refused, and the first, second, fourth and fifth were granted, with a modification of the second, and this action of the court is assigned as error.

The first instruction sets out that the knowledge of the defalcation of Herndon, without dismissal, would release the surety, and fully covered the law on the point, that if defendant in error knew, or might in justice to Herndon's surety (plaintiff in error) have known, from facts brought to his knowledge, that Herndon was failing to remit collections made by virtue of his office, and continued Herndon in his office, there could be no recovery in this action; and the fourth and fifth instructions given were practically to the same effect, varying only from the first in referring to the facts which it was considered that the evidence tended to prove.

The second instruction, as offered, injected into the case the rule of constructive notice, which was founded on the mistaken theory that there was on the part of defendant in error a duty to make continuous and diligent search into each levy of his deputy, and the payment of money collected. The rule of law invoked by plaintiff in error to the effect, that "whenever inquiry is a duty, the party bound to make it is affected with knowledge of all which he would have discovered had he performed the duty," has no application to this class of cases, in the absence of special provisions in the contract sued on, and in this case no such conditions and duties as propounded in the instruction were imposed upon the defendant in error, the bond being conditioned only upon Herndon's faithful discharge of the duties of his office as deputy sergeant.

The instruction, as given, was as follows, the modification appearing in italics:

"2. The court instructs the jury that knowledge of facts and circumstances naturally calculated to excite suspicion in the mind of a person of ordinary care, and to prompt him to pause and enquire, is sufficient to affect a party with notice of all facts necessarily to be discovered upon such inquiry, and to which the facts known furnish a reasonable and natural clue, and if they believe from the evidence that the plaintiff, Milstead,

had such knowledge of such facts and circumstances, they shall, *in the absence of countervailing evidence,* find him chargeable with notice."

Had the court granted the instruction as asked, the record discloses no avenue of inquiry which, if the defendant in error had followed, would have led him to the knowledge of Herndon's defalcation. It is agreed that all the moneys in the declaration mentioned, demanded by defendant in error in this action, were collected by Herndon after the 9th day of July, 1900, and before the 16th day of May, 1901, and the evidence shows unmistakably that Herndon's account was straight on July 6, 1900, and that the defalcations occurred only within about three months before Herndon's discharge, and that knowledge of the default was not brought home to defendant in error until a confession made by Herndon after his discharge. This confession was in writing, and was brought into the record by plaintiff in error, and the defendant in error testifies as to the date when he received it, and that it was the first intimation that he had of Herndon's defalcation, and there is no evidence that could be considered as tending to successfully contradict that statement. Therefore, it is manifest that the modification of this instruction could not have been prejudicial to plaintiff in error, though, as said by the learned judge below, its phraseology is not happy.

All that need be said of plaintiff in error's third instruction refused, is that the proposition of law contained therein, namely: that defendant in error was required to observe the utmost good faith toward plaintiff in error, as surety for Herndon, and, if from the evidence the jury believed that he failed to do so, then the surety would be discharged from liability for the subsequent acts of Herndon, was fully covered by the instructions which the court did give.

Brandt on Suretyship, sec. 423, says: "The mere negligence of the officers of a bank, in examining or checking the accounts of a clerk or cashier, does not amount to a fraud or concealment,

and will not discharge his surety."   To the same effect is *R., F. & P. R. R. Co.* v. *Kasey,* 30 Gratt. 227.   And in *Bostwick* v. *Van Voorhis,* 91 N. Y. 353, relied on by plaintiff in error, it is said, at p. 361: "Before a bond in such a case can be avoided the fraud and bad faith should be brought home to the obligee by quite clear and decisive evidence, otherwise bonds of this character will furnish a very precarious security to the parties who take them."   "A concealment which will avoid a guaranty must be a fraudulent one.   If not fraudulent in fact or in law, the defence is not made out."

The law of vendor and vendee has no analogy to that of surety and creditor, unless special provisions in the surety bond impose like conditions and duties as those imposed by the rule applicable to vendor and vendee, and, as already said, there were no such provisions in the bond in this case.

The sixth instruction offered by plaintiff in error and refused, as did its second as offered, sought to impose upon defendant in error duties not imposed, either by the law or by the contract, between the parties, and to have done so would have established a rule which would, as was said in *Howe Machine Co.* v. *Farrington,* 82 N. Y. 127, make instruments of that character of little value.   Good faith on the part of defendant in error was the test as to whether or not he was entitled to recover in this action.   *R., F. & P. R. R. Co.* v. *Kasey, supra; Crown* v. *Commonwealth,* 84 Va., 287, 4 S. E. 721, 10 Am. St. 839; Daniel on Neg. Insts. sec. 1309; Stearns on Suretyship, pp. 154, 157, 455; Brandt on Suretyship, *supra.*

"If the acts of fraud or dishonesty by the principal are not known to the creditor, the duty of disclosure does not apply, even though the creditor, by the exercise of ordinary diligence, might have discovered the default.   Such diligence need not be exercised in the interest of the surety or guarantor."

"Fraud will not be imputed, because the creditor, by reason of negligence or inattention to his own affairs, does not know of

the facts which materially affect the surety's risk." Stearns on Suretyship, *supra*.

All that was proper in the instructions refused was embraced in the instructions given, which, in our opinion, covered the entire case, and fairly submitted it to the determination of the jury. When instructions have already been given which cover the entire case and fairly submit it to the jury, to add repeated statements of the law, though in somewhat different form, would only tend to mislead and confuse the jury, and it is not error to refuse the additional instructions. *Ferguson* v. *Wills,* 88 Va. 139, 13 S. E. 392; *McDonald* v. *N. & W. Ry. Co.,* 95 Va. 99, 27 S. E. 821; *Myer* v. *Faulk,* 99 Va. 389, 38 S. E. 178.

The court is further of opinion that the remaining assignment of error, which is to the refusal of the trial judge to set aside the verdict of the jury, because contrary to the law and the evidence, is without merit, as the verdict is plainly in accordance with the law and the facts proven.

The judgment of the Corporation Court is affirmed.

*Affirmed.*