RELIANCE INSURANCE COMPANY, ETC.

v.

J.W. BURRESS, INC., ETC., ET AL.

Record No. 930731

April 15, 1994

Present: All the Justices

*Steven W. Bancroft (Alicia M. Lehnes,* on brief), for appellant.
*(Joseph Dyer; Louise DiMatteo; Siciliano, Ellis, Dyer & Boccarosse,* on brief), for appellee J.W. Burress, Inc. t/a General Supply & Equipment company.
*William L. Carey (Edward J. Longosz, II,* on brief), for appellees Kobelco America, Inc. and Kobe Steel, Ltd.

JUSTICE WHITING delivered the opinion of the Court.

In applying a statute of limitations to a claim for breach of implied warranties, we must decide when the plaintiff's cause of action accrued under the Uniform Commercial Code (UCC). Since the trial court decided the issue on the defendants' motion for summary judgment on the pleadings and exhibits attached thereto, we state the facts in the light most favorable to the plaintiff. *Addison v. Amalgamated Clothing and Textile Workers Union of America,* 236 Va. 233, 234, 372 S.E.2d 403, 404 (1988).

Kobe Steel, Ltd. (Kobe) manufactured a Kobelco K975 Hydraulic Excavator Face Shovel. Kobe's distributor, Kobelco America, Inc. (Kobelco), transferred the machine to J.W. Burress, Inc., trading as General Supply & Equipment Company (Burress), a heavy equipment dealer. In July 1986, Burress delivered the machine to Chantilly Crushed Stone, Inc. (Chantilly) for use in its rock quarry near Dulles Airport. The machine was delivered pursuant to the following pertinent provisions of Chantilly's June 1986 "Proposal" (the contract):

> *RENTAL / PURCHASE OPTION:* 12 month minimum rental of above K975 at $20,000 per month . . . . Purchase option may be exercixed. [sic] at any time during the 12 month period with 100% of paid rentals applied toward quoted purchase price [of $600,000].

Chantilly was also required to provide routine maintenance on the machine and to insure it against damage. For the duration of the "rental period," if Burress was unable to supply repair parts within seven days after the machine became inoperable, Chantilly was not liable for rent "during such downtime."

On August 6, 1987, Chantilly exercised its purchase option and bought the machine from Burress. Chantilly received full credit for its 13 monthly rental payments of $20,000. In December 1990, the machine caught fire during its operation and was extensively damaged. Chantilly's insurer, Reliance Insurance Company (Reliance), paid Chantilly the value of the machine.

In July 1991, Reliance filed this subrogation action against Burress and Kobelco. In January 1992, Reliance filed an amended motion for judgment, joining Kobe as a party defendant.

The trial court entered summary judgment dismissing Reliance's claims of breach of the implied warranties of merchantability and fitness for a particular use. The court concluded that the 1986 contract was a contract for sale and the cause of action accrued when Burress delivered the machine to Chantilly in July 1986; therefore, the statute of limitations had run.[1] Reliance appeals this ruling.

The parties agree that the applicable period of the statute of limitations under Code § 8.2-725 is four years. *See generally W.J. Rapp Co. v. Whitlock Equip. Corp.*, 222 Va. 80, 279 S.E.2d 133 (1981). They disagree when the cause of action accrued. The pertinent code sections provide:

> (1) An action for breach of any *contract for sale* must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made[.]

Code § 8.2-725 (emphasis added).

> *"Contract for sale"* includes both a present sale of goods and a contract to sell goods at a future time.

Code § 8.2-106(1).[2]

---

[1] Reliance did not appeal the court's ruling sustaining the defendants' motions for summary judgment on Reliance's count alleging negligence. The court overruled the defendants' motions for summary judgment on the count charging breaches of express warranties and later granted Reliance a nonsuit of that count.

[2] We do not consider the UCC provisions dealing with leases since they did not become effective until after this cause of action arose. Code §§ 8.2A-101 to -532 (Acts 1991, c. 536).

Reliance argues that the cause of action did not accrue until August 6, 1987, when Chantilly exercised its option to purchase. Reliance contends that the 1986 contract was a lease which only converted into a contract for sale when Chantilly exercised its option.

According to the defendants, the trial court correctly dismissed Reliance's implied warranty claims because the contract was a "contract for sale" under the UCC. Therefore, the defendants conclude that the cause of action accrued when Burress delivered the machine to Chantilly in July 1986, more than four years before the action was filed in July 1991.

■ We have already decided that a chattel lease without "an irrevocable option to buy" is not a sale under the UCC. *Leake v. Meredith,* 221 Va. 14, 16-17, 267 S.E.2d 93, 94-95 (1980). In the present case, we must decide whether Chantilly's purchase option converted what would otherwise have been a lease into a contract for sale under the UCC.

In examining the contract, we note that Chantilly did not bind itself to complete the sale and take title to the machine. It simply had an option to do so during the first 12 months of the lease. Nor was Chantilly obligated to continue the lease beyond the first 12-month period; it could have returned the machine at any time thereafter without further liability.

Although Chantilly was responsible for "routine" maintenance and service of the machine during the "rental period," it did not assume a responsibility for repair or replacement of broken or worn parts that were not "normal wear items." If Burress failed to repair or replace these parts after the first 12 months of the lease, Chantilly could have returned the machine with no further liability. And, even though Chantilly was required to insure the machine before it exercised its option, Burress, the owner, was presumably entitled to any insurance payment for loss or damage to the machine during the "rental period."

■ Under these circumstances, we conclude that the contract was neither a present sale of goods, nor a contract to sell goods at a future time. Instead, we conclude that the contract was a lease until Chantilly exercised its purchase option, converting the lease into a contract for sale. Therefore, the trial court erred in holding that, prior to the exercise of the option, the contract was a "contract for sale" under the UCC.

■ The defendants next contend that, even if the contract was a lease, Chantilly's cause of action accrued when the machine was delivered pursuant to the lease. However, Chantilly had no cause of action against the defendants during the term of the lease. *See Leake,* 221 Va.

at 17, 267 S.E.2d at 95. Chantilly's cause of action arose only after its exercise of the purchase option that converted its lease into a contract for sale under the UCC. Thus, we find no merit in this contention.

■ Finally, relying on Code § 8.1-201(37)(2)(a)-(d) and (3)(a)-(e), Burress contends that the cause of action accrued in July 1986 because the 1986 contract was not a lease, but rather a "secured installment sale" which provided Burress with a security interest in the machine. We quote the following pertinent provisions of those sections:

> [A] transaction creates a security interest if the consideration the lessee is to pay the lessor for the right of possession and use of the goods is an obligation *for the term of the lease not subject to termination by the lessee,* and
>
> > (a) The original term of the lease is equal to or greater than the remaining economic life of the goods;

Code § 8.1-201(37)(2) (emphasis added).

Burress overlooks the fact that, under the contract, Chantilly could have terminated its liability after the 12-month lease period, at which time the machine still had a substantial economic life. Further, Code § 8.1-201(37)(3) provides in pertinent part:

> A transaction does not create a security interest merely because it provides that:
>
> > . . . .
>
> > (b) The lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance . . . service or maintenance costs with respect to the goods;
>
> > (c) The lessee has an option . . . to become the owner of the goods[.]

Thus, we hold that the contract was not "a secured installment sale," as Burress contends.

We conclude that the court erred in sustaining the defendants' motions for summary judgment. Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*